UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

ROBERT FREDA,
KATHLEEN FREDA,

      Plaintiffs,

      v.                                                   Case No. 12-C-0570

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
AUTO CLUB INSURANCE COMPANY,

      Defendants.

---

ORDER GRANTING DEFENDANT STATE FARM AUTOMOBILE INSURANCE
COMPANY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 24)
AND SETTING STATUS CONFERENCE

On December 21, 2009, plaintiff Robert Freda, a parking attendant, was moving Nancy Frevert's van when the vehicle was rear ended by Norman Bongard. Frevert's van was insured by State Farm Mutual Automobile Insurance Company ("State Farm"), whose policy included underinsured motor vehicle ("UIM") coverage with a liability limit of $100,000 for damages arising from bodily injury to one person. The parties agree that the UIM coverage under State Farm's policy applies to the accident; however, they dispute how to calculate the UIM benefits.

State Farm moves for partial summary judgment seeking a declaration that the UIM benefits under Nancy Frevert's policy are calculated by taking the damages that the Fredas are entitled to recover under the policy and subtracting amounts paid: 1) by the underinsured motorist's liability insurer; and 2) under Wisconsin's worker's compensation law. The Fredas oppose summary judgment maintaining that while the damages may be reduced by amounts recovered from the underinsured motorist, the worker's compensation

benefits are a collateral source.  For the reasons set forth below, defendant's motion will be granted.

## Summary Judgment Standard

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## Findings of Fact

The following findings of fact are not in dispute.  Robert and Kathleen Freda are citizens of Wisconsin.  (Doc. 23 at ¶ 1.)  State Farm Mutual Automobile Insurance Company is a citizen of Illinois and Auto Club Group Insurance Company is a citizen of Michigan.  (*Id.* at ¶¶ 2, 3.)  In addition, the amount in controversy exceeds $75,000.00 without interest and costs.  (*Id.* at ¶ 4.)

State Farm issued Car Policy C02 3935-C10-49G ("Policy") to Frevert for a period commencing on April 16, 2009, and ending on September 10, 2009.  (Doc. 27 at ¶ 7.)  The Policy consisted of the Declarations Page, Policy Form 9849B, Endorsement 6097BC, and Guaranteed Renewal 6091T.  (*Id.*)  Consequently, the Policy was renewed on September 10, 2009, for the succeeding six-month period commencing on September 10, 2009, through March 10, 2010.  (*Id.* at ¶ 8.)  The renewed Policy consisted of the last issued

Declarations Page, Policy Form 9849B, Endorsement 6097BC and guaranteed renewal 6091T. (*Id.*)

Robert Freda was injured on December 21, 2009, while working as a ramp captain. (*Id.* at ¶ 11.) The injury occurred when Freda was moving Frevert's Dodge Caravan that was rear ended by a car driven by Norman Bongard. (*Id.* at ¶ 12.)

On that date, State Farm had in force and effect Car Policy C02 3935-C10-49G issued to Frevert. (*Id.* at ¶ 13.) The Policy described the Dodge Caravan as "your car" in the Policy. (*Id.* at ¶ 14.) The Policy included Coverage W, underinsured motor vehicle coverage with bodily injury limits of $100,000 each person and $300,000 each accident. (*Id.* at ¶ 15.) The Policy existed on November 1, 2009, and its first renewal date on or after November 1, 2009, was on March 10, 2010. (*Id.* at ¶ 16.)

The Policy contains the following provisions relevant to the pending dispute:

**THIS POLICY**
1.    This policy consists of:
    a.    the most recently issued Declarations Page;
    b.    the policy booklet version shown on that Declarations Page; and
    c.    any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

**DEFINITIONS**
*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, possessive, and any other form of these words and phrases. Defined words and phrases are printed in boldface italics.

*Occupying* means in, on, entering, or exiting.

3

*We* means the Company issuing this policy as shown on the Declarations Page. *Your Car* means the vehicle shown under "YOUR CAR" on the Declarations Page.

**UNDERINSURED MOTOR VEHICLE COVERAGE**
This policy provides Underinsured Motor Vehicle Coverage if "W" is shown under the "SYMBOLS" on the Declarations Page.

**Additional Definitions**
*Insured* means:
. . . ;
3. any other *person* while *occupying*:
   a. *your car*; . . . .

*Underinsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, or use of which is either:
   a. insured or bonded for bodily injury liability at the time of the accident; or
2. for which the total limits of insurance and self-insurance for bodily injury liability from all sources:
   a. are less than the Underinsured Motor Vehicle Coverage limits of this policy; or
   b. have been reduced by payments to *persons* to less than the Underinsured Motor Vehicle Coverage limits of this policy.

**Insuring Agreement**

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be:
1. sustained by an *insured*; and
2. caused by an accident that involves the ownership, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

*We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing.

**Nonduplication**

The Underinsured Motor Vehicle Coverage limits described under the Limits provision will be reduced by any of the following that apply:

4

1. the amount paid by or on behalf of any *person* or organization that may be legally responsible for the *bodily injury* for which payment is made;
2. the amount paid for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*; or
3. the amount paid or payable under any workers' compensation or disability benefits law.

The Underinsured Motor Vehicle Coverage shall be excess over and shall not pay again any damages that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

**GENERAL TERMS**

**1. When Coverage Applies**

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

**4. Changes to This Policy**

**a. Changes in Policy Provisions**

*We* may only change the provisions of this policy by:
(1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or
(2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *yo*u the broader coverage as of the date *we* make the change effective in the state of Wisconsin without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

**14. Choice of Law**

Without regard to choice of law rules, the law of the state of:

5

> a. Wisconsin will control, except as provided in sub. B. below, in the event of any disagreement as to the interpretation and application of any provision in this policy;
>
> **15. Severability**
>
> If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:
> a. Such provision will remain in full force to the extent not held invalid or unenforceable; and
> b. All other provisions of this policy will remain valid and enforceable.

(*Id.* at ¶ 18.)

After the Policy issued, State Farm drafted Amendatory Endorsement 6949B which reads in material part as follows:

> **UNDERINSURED MOTOR VEHICLE COVERAGE**
> . . . .
>
> c. Nonduplication
>
> This provision is changed to read:
> We will not pay under Underinsured Motor Vehicle Coverage any damages:
> 1. that have already been paid to or for the *insured*:
>    a. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; . . .
> 2. that:
>    a. have already been paid;
>    b. could have been paid; or
>    c. could be paid
>    to or for the *insured* under any workers' compensation law, disability benefits law, or similar law; or
>
> 3. that have already been paid as expenses under Medical Payments Coverage of this policy, the medical payments coverage of any other policy, or other similar vehicle insurance.

(*Id.* at ¶ 19.)

6

For car policies first issued in Wisconsin on November 1, 2009, State Farm issued Endorsement 6949B as a part of its policy. (*Id.* at ¶ 5.) For Wisconsin policies that existed on November 1, 2009, State Farm issued Amendatory Endorsement 6949B at the time of the policy's first renewal date on or after November 1, 2009. (*Id.* at ¶ 6). Accordingly, Endorsement 6949B was not issued for Car Policy C02 3935-C10-49G for the September 10, 2009, to March 10, 2010, period. (*Id.* at ¶ 9.) Rather Endorsement 6949B first issued for Policy C02 3935-C10-49G at the time of its first renewal following October 31, 2009, which occurred on March 10, 2010. (*Id.;* Gustafson Decl. ¶ 3.)

Robert and Kathleen Freda recovered $50,000.00 from Allstate Insurance Company on behalf of Bongard who was responsible for the December 21, 2009, accident. (Doc. 27 at ¶ 20.) This payment to the Fredas exhausted Bongard's liability coverage. (*Id.*) In addition, Robert Freda received worker's compensation benefits in the sum of $66,822.75 for injuries and damages he claims as a result of the December 21, 2009, accident. (*Id.* at ¶ 22.) Pursuant to Wis. Stat. §102.29, the worker's compensation carrier was reimbursed $19,856.40 out of the $50,000.00 payment made by Allstate Insurance Company. (*Id.* at ¶ 23.) Finally, an advance against the underinsured motorist coverage under policy C02 3935-C10-49G in the amount of $10,000.00 has been paid to the Fredas. (*Id.* at ¶ 10.)

The Fredas commenced this action against State Farm and Auto Club Insurance Association in Milwaukee County Circuit Court. Pursuant to 28 U.S.C. § 1441 and 1446, State Farm removed the action to this court based on diversity jurisdiction.

**Analysis**

The sole issue for this court on State Farm's partial summary judgment motion is how to calculate the UIM benefits under Frevert's Policy. State Farm maintains that the damages are reduced by the payments received under Bongard's liability insurance and worker's compensation benefits. Hence, damages would be reduced by $96,866.65 ($50,000 paid on behalf of the underinsured motorist and $46,866.65 in net payments under Wisconsin's worker's compensation law). The Fredas respond that they should be entitled to recover up to $100,000 from the State Farm Policy, with a credit of $30,143.60 from the total recovery ($30,143.60 is calculated by taking into account the $50,000 paid on behalf of the underinsured motorist minus the $19,856.40 that Freda is required to reimburse the worker's compensation carrier).

The court's goal in interpreting an insurance policy is to give effect to the parties' intent. *Folkman v. Quamme*, 2003 WI 116, ¶ 16, 264 Wis.2d 617, 665 N.W.2d 857. If the policy language is unambiguous, the court will enforce it as written. *Id.*, ¶ 13. Ambiguous policy language will be construed in favor of the insured. *Id.* Policy language is ambiguous if it is susceptible to more than one reasonable interpretation. *Id.*

Two sections of the Policy unambiguously provided for reducing the policy limits. Under the provision entitled Limits, the Policy provided that the limit would be reduced by the sum of all payments made for the bodily injury made by or on behalf of any person or organization who is or may be held legally liable for the accident. (Doc. 22-1, Ex. A at 23.) Under a second provision entitled Nonduplication, the limits are reduced by "the amount paid by or on behalf of any ***person*** or organization that may be legally responsible for the

8

***bodily injury*** for which payment is made" and the "amount paid or payable under any worker's compensation or disability benefits law."

Such reducing clauses were and are permissible policy provisions under Wis. Stat. § 632.32(5)(i). There was a two-year period commencing in 2009, when the legislature amended § 632.32 to prohibit reducing clauses. However, the statute was amended again in 2011, and the language from the 2005–06 version was reinstated. *See* 2011 Wis. Act 14, § 26. Wis. Stat. § 632.32(5)(i) states that a policy may provide for a reduction in UIM coverage for "[a]mounts paid or payable under any worker's compensation law" and "[a]mounts paid or payable under any disability benefits laws." See Wis. Stat. § 632.32(5)(i)(2) and (3).

When the legislature amended § 632.32 on June 29, 2009, it specified that the effective date for the treatment of § 632.32(5)(i) would be on the first day of the fifth month beginning after publication. 2009 Wis. Act 28, § 9426(2). Accordingly, the effective date was set at November 1, 2009. *See id.* Significantly, Act 28 further specified that the treatment of § 632.32(5)(i) would first apply to insurance policies "issued or renewed on the effective date" of November 1, 2009. *Id.* at § 9326(6).

The Frevert Policy issued on April 27, 2009, and renewed on September 10, 2009. The next renewal was on March 10, 2010. (Doc. 27 at ¶¶ 8-9.) The accident at the center of this dispute occurred during the six-month renewal policy period that began on September 10, 2009, and ended on March 10, 2009. Hence, Act 28 first applied to Frevert's policy on the March 10, 2010, renewal date and did not apply at the time of the December 10, 2009, accident. On the date of the accident, Wis. Stat. § 632.32(5)(i) still governed the Frevert policy.

9

Nevertheless, the Fredas rely on a Wisconsin Endorsement 6949B drafted by State Farm that eliminated the reducing clauses cited above but added exclusions to the Policy limits. Specifically, the provision entitled Limits removed the language which reduced the policy limits by sums paid by the liable party. Then, in the amended Nonduplication clause, State Farm provided that it would not pay under UIM any damages: (1) that have been paid to or for the insured "by or on behalf of any person or organization who is or may be held legally liable for the bodily injury to the insured" or (2) that "have been paid, could have been paid, could be paid to or for the insured under any worker's compensation law ...." The parties have stipulated that Endorsement 6949B became effective on November 1, 2009, and was included in Wisconsin policies issued or renewed on or after that date. (Docs. 22-2, 27 at ¶ 6.)

The Fredas take the position that State Farm could not add exclusions with a mid-term policy change but that the provisions of the endorsement that expanded coverage by eliminating the reducing clauses automatically became a part of the Frevert Policy pursuant to General Terms, paragraph 4.a.(2) included in the insurance policy. (Pl.s' Br. in Resp. to State Farm's Mot. for Summ. J. at 9.) That paragraph provided that "if any coverage of this policy is changed to give broader coverage, then we will give you the broader coverage as of the date we make the change effective in the state of Wisconsin without issuing a revised policy booklet, a revised policy Declarations page, or an endorsement." (Doc. 27 at ¶ 18.)

The Fredas further argue that once State Farm removed the reducing clauses through the endorsement, they had a reasonable expectation that the reducing clauses were no longer applicable. On the other hand, plaintiffs argue that State Farm could not

10

add the exclusion without any notice. *See* Wis. Stat. § 631.36(5)(if the insurer purports to renew the policy on less favorable terms, the new terms take effect on the renewal date with notice).

Regardless, the Fredas were not State Farm policyholders and had no entitlement to a copy of the Policy or any endorsements. The critical issue is whether the statutory amendment and the endorsement applied to the Policy prior to or at the time of the accident. To that end, § 9326 of Act 28 provides that the change is effective in Wisconsin on November 1, 2009, for policies issued or renewed on that day. Here, the Policy was renewed on March 10, 2010. Endorsement 6949B became effective on November 1, 2009, and was included in Wisconsin policies "issued or renewed on or after that date." Consequently, the Frevert policy was governed by Wis. Stat. § 632.32(5)(I) and did not need to conform with the amendment until the amendment first applied at the time of renewal--after the November 1, 2009, effective date and the December 21, 2009, accident.

Because § 632.32(5)(i) governs the case at hand and Endorsement 6949B did not apply until renewal, the Policy language dictates that the amount received from worker's compensation should be deducted from the total damages that the Fredas can receive. In addition, when determining the amount of UIM benefits a party can collect, the amount a party paid back to worker's compensation should be reimbursed to them. *See Dempich v. Pekin*, 2006 WI App 24, ¶¶ 4, 26, 209 Wis. 2d 477, 710 N.W.2d 691. Accordingly, the $50,000 the Fredas received from the underinsured motorist and the $66,722.75 paid by worker's compensation should be deducted from the UIM benefits, but the Fredas should be reimbursed for the $19,856.40 they paid back to worker's compensation because an employee is guaranteed to retain at least one-third of the remainder after deducting the

11

reasonable costs of collection. Wis. Stat. §102.29(1)(b)(1). Therefore, the total damages the Fredas are entitled to recover under the UIM benefits is $3,133.65. Now, therefore,

IT IS ORDERED that defendant State Farm's motion for partial summary judgment is granted.

IT IS FURTHER ORDERED that a Status Conference is scheduled for August 27, 2013, at 2:00 PM in Courtroom 222.

Dated at Milwaukee, Wisconsin, this 23rd day of July, 2013.

BY THE COURT

/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE